UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| **JUSTIN ASHLEY ROHRBAUGH**<br><br>**OLGA LETICIA GARCIA MARROQUIN DE ROHRBAUGH**,<br><br>Plaintiffs,<br><br>v.<br><br>**MICHAEL R. POMPEO, et al.**,<br><br>Defendants. | Case No. 19-cv-505 (CRC) |

**MEMORANDUM OPINION**

Plaintiffs Justin and Olga Rohrbaugh brought this action seeking relief from the denial of Mrs. Rohrbaugh's immigrant visa application by a U.S. consular officer in Guatemala. They claim that the denial violates the Administrative Procedure Act as well as their Fifth Amendment rights to due process. Defendants moved to dismiss principally for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that the doctrine of consular non-reviewability precludes this Court's review. Because the Court finds that the Rohrbaughs have failed to assert a constitutionally protected interest that would permit judicial review of a consular visa decision, the Court will grant the motion and dismiss the case.

I. Background

Plaintiffs Justin and Olga Rohrbaugh met in 2014 and wed the following year. Am. Compl. ¶ 42. Mr. Rohrbaugh is a U.S. citizen, Am. Compl. ¶ 20; Mrs. Rohrbaugh, a native of Guatemala, entered the country in 2008 outside of the proper channels. Am. Compl. ¶ 21; Exh. B ¶ 3. Once married, the couple followed the procedures for Mrs. Rohrbaugh to become a lawful permanent resident based on marriage to a U.S. citizen. Am. Compl. ¶ 42–47. First, Mr.

Rohrbaugh successfully petitioned U.S. Citizenship and Immigration Services ("USCIS") to establish the validity of the marriage. Am. Compl. ¶ 43; Exh. D. Because of her prior illegal entry, Mrs. Rohrbaugh was deemed "inadmissible" and required a waiver from USCIS before she could be considered for permanent residence. Am. Compl. ¶ 36, 44; Exh. E. She applied for the necessary waiver, which USCIS granted in June 2016. Am. Compl. ¶ 44–45; Exh. E, F.

Waiver in hand, Mrs. Rohrbaugh left the United States and returned to Guatemala to apply for her immigrant visa at the U.S. Embassy there. Am. Compl. ¶ 46. Mrs. Rohrbaugh appeared at the Embassy for her immigrant visa interview, during which a U.S. consular officer determined that she was inadmissible to the U.S. and denied her visa application. Am. Compl. ¶ 47. In particular, the consular officer determined that Mrs. Rohrbaugh is inadmissible because she fit the statutory definition of a "human smuggler," see 8 U.S.C. § 1182(a)(6)(E), and because she had been unlawfully present in the U.S. for more than a year and sought admission within ten years of her departure, see 8 U.S.C. § 1182(a)(9)(B)(i)(II). See Am. Compl. ¶ 5; Def.'s Mot. to Dismiss 7; Derentz Decl. ¶¶ 4–6. Although they had no right of administrative appeal, Mr. Rohrbaugh emailed the Immigrant Visa Chief of the U.S. Embassy in Guatemala to request a review of the consular officer's decision. Am. Compl. ¶ 48. The Immigrant Visa Chief reviewed the decision in consultation with the Department of State in Washington, D.C. and upheld the denial. Am. Compl. ¶ 48; Exh. H.

Plaintiffs then filed suit in federal court on February 27, 2019,[1] asking the Court to set aside the consular officer's decision as arbitrary and capricious under the Administrative

---

[1] Plaintiffs filed the operative Amended Complaint on May 9, 2019 to clarify that Plaintiffs' counsel is a member of this Court's bar.

Procedure Act and contrary to the Rohrbaughs' Fifth Amendment rights to due process. Am. Compl. ¶¶ 51–81. They allege that Mrs. Rohrbaugh is "suffer[ing] the hardships of unreasonably and unlawfully being deprived of admission to and lawful permanent residency in the United States," and that Mr. Rohrbaugh is being "deprived of the company and support of his wife." Am. Compl. ¶ 10.

Defendants—various officials at the Department of State—have moved to dismiss the case for lack of subject matter jurisdiction and for failure to state a claim, arguing that the doctrine of consular non-reviewability precludes judicial review of visa denials. Def.'s Mot. to Dismiss 1. The government also seeks to have the case transferred to the Northern District of Ohio, where Mr. Rohrbaugh resides. Def.'s Mot. to Dismiss 2.

## II. Standard of Review

When analyzing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint, and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). Even so, the Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Friends of Animals v. Zinke, 373 F. Supp. 3d 70, 81 (D.D.C. 2019). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v.

3

Defs. of Wildlife, 504 U.S. 555, 561 (1992); Shekoyan v. Sibley Int'l Corp., 217 F. Supp. 2d 59, 63 (D.D.C. 2002).[2]

## III. Analysis

Plaintiffs seek judicial review of a U.S. consular officer's decision to deny Mrs. Rohrbaugh a visa. They argue that the Administrative Procedure Act's ("APA") judicial review provisions open the courthouse doors to permit review of a consular officer's visa determinations because the APA carries a "'presumption' of judicial review of agency action." See Saavedra Bruno v. Albright, 197 F.3d 1153, 1157 (D.C. Cir. 1999) (noting that the presumption "is said to derive from APA § 702," which broadly permits judicial review to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action").

But, under the long-standing doctrine of consular non-reviewability, courts do not typically have subject-matter jurisdiction to review visa denials because consular officers "have complete discretion over issuance and revocation of visas." Id. at 1158 n.2. Courts routinely apply this doctrine to bar suits seeking review of visa denials in light of "the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions." Id. at 1159–60 (collecting cases).

The APA's judicial review provisions are not an exception to this general rule. The consular non-reviewability doctrine's "limitation[] on judicial review" is "unaffected by § 702's opening clause granting a right of review to persons suffering legal wrong from agency action."

---

[2] Defendants also moved to dismiss under Rule 12(b)(6). Because the Court ultimately concludes that it lacks subject-matter jurisdiction over the Rohrbaughs' claims, it need not reach the 12(b)(6) arguments. See, e.g., Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n, 317 F. Supp. 3d 504, 513–14 (D.D.C. 2018).

Id. at 1160 (internal quotations omitted). Section 702 explicitly preserves "other limitations on judicial review" that predated the APA, which include the doctrine of consular non-reviewability. Id. at 1158; see also Udugampola v. Jacobs, 70 F. Supp. 3d 33, 42 n.7 (D.D.C. 2014) ("[T]he APA does not provide the plaintiffs with a cause of action to assert a claim otherwise barred by the doctrine of consular non-reviewability."); Mostofi v. Napolitano, 841 F. Supp. 2d 208, 211 (D.D.C. 2012) ("[T]he APA does not permit judicial review of consular visa decisions[.]"); see also Chun v. Powell, 223 F. Supp. 2d 204, 206 (D.D.C. 2002) (collecting cases). The APA therefore does not provide the Rohrbaughs a vehicle for judicial review.

The Rohrbaughs do invoke one recognized exception to the consular non-reviewability doctrine. The so-called "Mandel exception" permits federal courts to review a consular officer's decision when the decision implicates the constitutional rights of a U.S. citizen. See Kleindienst v. Mandel, 408 U.S. 753, 770 (1972). But that review is quite limited: If a plaintiff can point to a constitutional violation, courts will only review the decision to ensure that it is "facially legitimate and bona fide." Id.; see also Kerry v. Din, 135 S. Ct. 2128, 2139–41 (2015) (Kennedy, J., concurring) (applying the "facially legitimate and bona fide" standard to a visa denial).

In Mandel, the Supreme Court reviewed the denial of a visa for a Belgian journalist who was a self-described "revolutionary Marxist." Id. at 756. At the time, the immigration statutes marked advocates of communism as "inadmissible," subject to a discretionary waiver by the Attorney General. Id. at 755 (citing statutory provisions). The journalist and several U.S. citizens filed suit claiming that the denial infringed on the citizens' First Amendment rights by "prevent[ing] them from hearing and meeting with Mandel in person for discussions." Id. at 760. The Court held that although Mandel, as "an unadmitted and nonresident alien," could not

5

challenge the denial, the citizens wishing to hear him speak could do so because the visa denial implicated their constitutional rights. Id. at 762–64.

Recognizing its long history of "sustain[ing] Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden," the Supreme Court limited its review to a determination of whether the denial was "facially legitimate and bona fide." Id. at 766, 769. The Court held that when a denial is based on a facially legitimate and bona fide reason, reviewing courts "will neither look behind the exercise of that discretion, nor test it by balancing its justifications against the [constitutional] interests of those" who hold them. Id. at 770. Under the Mandel exception to the doctrine of consular non-reviewability, this Court would have subject matter jurisdiction to hear this suit only if either of the Rohrbaughs has a constitutional right implicated by the denial of Mrs. Rohrbaugh's visa application. Unfortunately for the Rohrbaughs, neither does.

First, as a foreign national residing outside of the United States, Mrs. Rohrbaugh does not have constitutional rights implicated by the denial of her visa. Id. at 762 ("an unadmitted and nonresident alien . . . ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise"); see also Udugampola v. Jacobs, 795 F. Supp. 2d 96, 96 n.1 (D.D.C. 2011) (finding "beyond dispute" that an unadmitted and nonresident plaintiff has "no constitutional right to enter the United States"); Van Ravenswaay v. Napolitano, 613 F. Supp. 2d 1, 5 (D.D.C. 2009) (same).

The only question that remains then is whether Mrs. Rohrbaugh's U.S.-citizen husband's Fifth Amendment rights were violated when the consular officer denied her visa application. The Rohrbaughs claim that the visa denial has "deprived [Mr. Rohrbaugh] of the company and support of his wife." See Comp. ¶ 10. On that theory, the Constitution's protection over the

institution of marriage "encompasses the right of spouses to live together and to raise a family" because marriage "is central to human life, requires and enjoys community support, and plays a central role in most individuals' orderly pursuit of happiness." Din, 135 S. Ct. at 2142 (Breyer, J., dissenting) (internal quotations omitted); see also Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008) (reviewing a denial of a visa application on behalf of a U.S.-citizen spouse because "[f]reedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process Clause").

The Supreme Court squarely faced this question in Kerry v. Din, 135 S. Ct. 2128 (2015), but the Court fractured and ultimately left the question unresolved.[3] As a result, this Court is

---

[3] Justice Scalia, writing for three justices, would have held that there is no "constitutional right to live in the United States with [your] spouse." Din, 135 S. Ct. at 2131 (plurality). Justice Breyer, writing for four, argued that the Court had already recognized a liberty interest in marriage, which "encompasses the right of spouses to live together and to raise a family." Id. at 2142 (Breyer, J., dissenting). In his concurrence, Justice Kennedy elided the question and simply assumed that "a citizen has a protected liberty interest in the visa application of her spouse" before finding that "the notice [the Plaintiff] received regarding her husband's visa denial satisfied due process." Id. at 2139 (Kennedy, J., concurring).

None of the reasonings supporting the three opinions in Din are logical subsets of another. Justice Scalia and Justice Breyer's opinions differ in answering the antecedent question (i.e., whether there is a liberty interest), whereas Justice Kennedy and Justice Breyer differed on the logically distinct question of whether due process was afforded if a liberty interest were at stake. Thus, "there is no controlling opinion" and the "precedent is to be read only for its persuasive force." See United States v. Epps, 707 F.3d 337, 349 (D.C. Cir. 2013) ("[T]here is no controlling opinion [when] the plurality and concurring opinions do not share common reasoning whereby one analysis is a logical subset of the other.") (internal quotations omitted); see also King v. Palmer, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) (holding that the "narrowest opinion" in a Marks analysis "must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment").

Indeed, a majority of the justices agreed that the liberty question remains open. See Din, 135 S. Ct. at 2139 (Kennedy, J. concurring) ("Today's disposition should not be interpreted as deciding whether a citizen has a protected liberty interest in the visa application of her alien spouse."); id. at 2142 (Breyer, J., dissenting) ("The plurality opinion [regarding the lack of a liberty interest] is not controlling.").

bound by circuit precedent. In Swartz v. Rogers, the D.C. Circuit held that although "deportation would put burdens upon the marriage," such as imposing "the choice of living abroad with [your spouse] or living in this country without" them, it "would not in any way destroy the legal union which the marriage created." 254 F.2d 338, 339 (D.C. Cir. 1958). "The physical conditions of the marriage may change, but the marriage continues." Id. When the fact of a marriage is unaffected, the Circuit found, a U.S. citizen "has no constitutional right which is violated by the deportation" of their spouse. Id.

Applying Swartz, numerous courts in this district have ruled that a U.S. citizen has no constitutional right which is violated by the denial of a spouse's visa application. See Singh v. Tillerson, 271 F. Supp. 3d 64, 71 (D.D.C. 2017) ("[W]hile the Constitution protects an individual's right to marry and the marital relationship, these constitutional rights are not implicated when a spouse is removed or denied entry to the United States."); Jathoul v. Clinton, 880 F. Supp. 2d 168, 172 (D.D.C. 2012) ("While it may well be true that exclusion of her husband imposes burdens on their married life, the Court cannot find any constitutional violation."); Escobar v. I.N.S., 700 F. Supp. 609, 612 (D.D.C. 1988) (holding that a U.S. citizen "has no constitutional right to have his or her alien spouse enter or remain in the United States"). The denial of Mrs. Rohrbaugh's visa application no doubt burdens the Rohrbaughs' marriage, but it did "not in any way destroy the legal union which the marriage created." Swartz, 254 F.2d at 339. Because the consular officer's decision to deny Mrs. Rohrbaugh's visa application did not interfere with Mr. Rohrbaugh's right to marry, controlling precedent establishes that he has not suffered a violation of his constitutional rights.[4]

---

[4] The Rohrbaughs' reliance on Muñoz v. Dep't of State is misplaced. There, the magistrate judge followed Ninth Circuit precedent to find that "[a] U.S. citizen 'has a protected

8

Thus ends this case. Without a cognizable constitutional violation on which to hang their hats, the Rohrbaughs cannot avoid the doctrine of consular non-reviewability. This Court, therefore, is without subject-matter jurisdiction to review the consular officer's decision to deny Mrs. Rohrbaugh a visa.[5]

## IV. Conclusion

For the foregoing reasons, the Court must grant Defendant's Motion to Dismiss. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: August 22, 2019

---

liberty interest in her marriage that gives rise to a right to constitutionally adequate procedures in the adjudication of her husband's visa application.'" 17-cv-0037, 2017 WL 8230036, at *3 (C.D. Cal. Dec. 11, 2017) (quoting Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008)). Given Swartz, that is not the law in this Circuit.

[5] Although the Court will deny Government's motion to transfer this case to the Northern District of Ohio, it notes that a court there would be equally bound by its circuit precedent as this Court is. The Sixth Circuit has directly held that "[a] denial of an immediate relative visa does not infringe upon the[] right to marry." Bangura v. Hansen, 434 F.3d 487, 496 (6th Cir. 2006); see also Almario v. Attorney General, 872 F.2d 147, 151 (6th Cir. 1989) ("The Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country.").